**Adele Florence, a Minor, by Frank Florence, Her Father and Next Friend, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.**

**Gen. No. 50,335.**

First District, Second Division.

October 25, 1966.

Rehearing denied November 21, 1966.

Harold A. Liebenson and Marvin A. Marder, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Philip Sheridan, Assistant Corporational Counsel, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This action was brought to recover for injuries allegedly occasioned by the negligence of the City of Chicago

in failing to maintain a public crosswalk. The Chicago Transit Authority was also named as a defendant but was directed out of the case at the end of plaintiff's evidence. The jury returned a verdict for the City of Chicago and plaintiff appeals. No appeal is taken from the judgment following the order directing the Chicago Transit Authority out of the case.

The mishap occurred on October 23, 1954, when plaintiff was approximately eighteen months old. She was being carried by her mother across the intersection of 63rd Street and California Avenue in Chicago, from the southeast corner to the northeast corner. On the date in question, 63rd Street was serviced by Chicago Transit Authority bus transportation, but streetcar rails from the recently discontinued streetcar transportation were still exposed. As Mrs. Florence crossed in the crosswalk her foot allegedly caught in an open space between the southernmost rail and the brick pavement, causing her to fall to the ground. Plaintiff was propelled from her arms some six to eight feet forward, struck her head on another rail and was knocked unconscious. Mrs. Florence picked up the plaintiff and struck her on the backside to awaken her, and plaintiff began projectile vomiting. She was taken to a hospital and then to the family pediatrician who ordered that X rays be taken.

Three persons testified for plaintiff concerning the nature and condition of the crosswalk on the day in question. Mrs. Florence, plaintiff's mother, testified she observed the area where she fell immediately- after her fall and noticed the bricks around the rail to be uneven and missing; there was a two to three inch difference between the top of the rail and the top of the bricks at the place where she allegedly caught her foot. Eugene Semsky testified he had resided in the neighborhood from July to December of 1954. He stated that he was familiar with the crosswalk and that its condition was poor; the bricks, or "cobble stones," with which 63rd Street was paved

were missing near the rails, and the southernmost rail was some two to three inches above the surface of the bricks. He further stated there were some twelve bricks missing in the crosswalk. Walter Kiltz, another resident of the neighborhood on October 23, 1954, testified the south rail in the crosswalk was some two inches above the pavement surface, that some five or six bricks were missing or broken in the crosswalk next to the rail, and that this condition existed at the time of the accident and persisted for some one or two months after October 23, 1954, at which time the City repaired the area with an asphalt coating.

Sigmund LaPorta testified for the defense and stated that he had been employed as a chef in a restaurant some four doors from the intersection of 63rd Street and California Avenue for several years prior to October 23, 1954, and had been so employed on that date and for several years thereafter. He stated that he used the crosswalk every day during this period and testified that the area was never in a state of disrepair. The witness identified three photographs of the area as correctly portraying the condition of the area and of the crosswalk as of the date in question. The three photographs received as evidence show the entire area to be in a state of good repair.

It appears that several X rays were taken of plaintiff's skull after the accident and allegedly showed a lineal skull fracture. The trial court, however, refused to allow plaintiff's pediatrician, Dr. Schultz, to testify to the results of the X rays for the reason that the X-ray negatives had been destroyed prior to trial and could therefore not be produced at the trial for purposes of cross-examination. The court's ruling was partly based on the fact that Dr. Schultz stated, during plaintiff's offer of proof, that one of his X-ray reports showed the fracture to be on the left side of plaintiff's head, whereas another report showed the fracture to be on the right side. The trial judge felt the matter involved a question of expert interpretation

46

for which the X-ray negatives themselves were indispensable for purposes of cross-examination.

█ The City maintains the evidence adduced at trial warranted the jury in finding no liability on the part of the City. The jury rendered a general verdict "for the defendant and against the plaintiff." Where a jury renders a general verdict for a defendant, the verdict will not be disturbed on review if the evidence under the issues joined under one or more counts sustains that verdict. Goldschmidt v. Chicago Transit Authority, 335 Ill App 461, 82 NE2d 357; Ill Rev Stats 1965, chap 110, par 68(4). On all of the evidence presented we are of the opinion that the jury was warranted in finding no liability on the part of the City.

Evidence was offered by both parties as to the condition of the crosswalk on or about October 23, 1954. The three witnesses who testified for the plaintiff stated that on the day in question between six and twelve bricks were loose or broken in the crosswalk near the southernmost rail and that the rail lay some two to three inches above the surface of the brick pavement. Defendant's witness, on the other hand, testified that he passed over the crosswalk every day on his way to and from work, and that the crossing was not in a state of disrepair at the time of plaintiff's accident. He further identified three photographs of the crosswalk as correctly portraying the area and its condition of repair as of the date of the accident, which photographs clearly show the area to be in a state of good repair. On this posture of the evidence the issue was reduced to a question of weight and credibility for the jury and we feel that the jury was justified in finding no liability on the part of defendant City of Chicago.

█ Plaintiff maintains that the trial judge abused his discretion in admitting the three photographs into evidence for the reason that plaintiff's witnesses testified to the state of disrepair of the area as of the date of the accident, thereby rendering the matters shown on the

photographs contrary to the laws of human experience. However, the question was not one of admissibility of the photographs as evidence, but was a matter of weight and credibility to be given to the photographs to be resolved by the jury.

█ Plaintiff further maintains she was denied a fair trial because of certain errors allegedly committed by the trial court and the closing counsel. The first point which plaintiff advances in this regard is the refusal of the trial judge to allow testimony of Dr. Schultz as to what he found on the X-ray negatives taken of plaintiff's head after the occurrence. It appears that the X-ray negatives themselves had been destroyed prior to the trial and the trial judge felt it would be unfair to allow Dr. Schultz to testify from the reports which other doctors submitted to him for the reason that the other doctors made conflicting statements as to what they found on the X rays. Consequently, without the X-ray negatives themselves, the defendant was not in a position to cross-examine Dr. Schultz concerning the conflicting interpretations on the reports. Furthermore, without the X-ray negatives, defendant would have been unable to present its own expert to interpret the results. Under these circumstances we feel the trial judge did not abuse his discretion in refusing to allow the testimony of Dr. Schultz without the production of the X-ray negatives.

█ A second point raised by plaintiff is the fact that the trial judge permitted defendant an extra peremptory challenge. The record shows that the trial judge and the defendant assumed defendant had one challenge remaining before defendant exercised that challenge, whereas all of defendant's challenges had been exhausted. After it had been exercised, plaintiff's counsel called the fact to the court's attention and the court offered plaintiff an additional challenge. Contrary to plaintiff's contention the deviation from strict adherence to the statute in this

regard in no way prejudiced the plaintiff to her right to a fair trial. See Smiley v. Barnes, 196 Ill App 536; Ill Rev Stats 1965, chap 110, par 66.

 ■ Plaintiff also contends the trial court erred in refusing to give to the jury Plaintiff's Proffered Instruction No. 10, relating to the question of the negligence of Mrs. Florence as not affecting plaintiff's right of recovery. We find no error in this ruling since the instructions which were given to the jury informed the jury that the negligence of plaintiff and her mother was not an issue in the case. The court would have been redundant had it given Plaintiff's Instruction No. 10.

We have considered other points raised by plaintiff and find them to be without merit.

The judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and LYONS, J., concur.